UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Case No. 12-cv-9087 |
| | ) |
| v. | ) |
| | ) |
| CLICKBOOTH.COM, LLC, a Florida limited liability company, also d/b/a Clickbooth, | ) |
| | ) |
| INTEGRACLICK, LLC, a Florida limited liability company, f/k/a IntegraClick, Inc., | ) |
| | ) |
| JOHN DANIEL LEMP, individually, as an owner and officer of INTEGRACLICK, LLC, and as an officer of CLICKBOOTH.COM, LLC, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER EQUITABLE RELIEF**

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).

3. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c), and 15 U.S.C. § 53(b).

**PLAINTIFF**

4. The FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces Section 12 of the FTC Act, 15 U.S.C. § 52, which prohibits false advertisements for food, drugs, devices, services, or cosmetics in or affecting commerce.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b) and 56(a)(2)(A).

**DEFENDANTS**

6. Defendant Clickbooth.com, LLC ("Clickbooth"), also doing business as Clickbooth, is a Florida limited liability company with its principal place of business at 5901 N. Honore Avenue, Suite 210, Sarasota, Florida 34243. Clickbooth transacts or has transacted business in this district and throughout the United States.

7. Defendant IntegraClick, LLC ("IntegraClick"), formerly known as IntegraClick, Inc., is a Florida limited liability company with its principal place of business at 5901 N. Honore Avenue, Suite 210, Sarasota, Florida 34243. IntegraClick transacts or has transacted business in this district and throughout the United States.

8. Defendant John Daniel Lemp ("Lemp") is the 100% owner and chief executive officer of IntegraClick and the chief executive officer of Clickbooth. At all times material to this

Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Clickbooth and IntegraClick, including the acts and practices set forth in this Complaint. Among other things, he has negotiated agreements with merchants to advertise, market, and promote weight loss and other products to consumers, and has recruited others to advertise, market, and promote the products. Defendant Lemp, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

9. Defendants Clickbooth and IntegraClick (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices alleged below. Defendants have conducted the business practices described below through interrelated companies that have common ownership, officers, managers, business functions, employees, and office locations, and that commingle funds and operate a common scheme. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendant Lemp has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

10. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

11. Since at least 2008, using a network of affiliate marketers, Defendants have advertised, marketed, and promoted various products to consumers throughout the United States,

including weight loss products, which include but are not limited to Acai Pure, Acai Max, Pure Berry Max, Acai Advanced Cleanse, Acai UltraBerry Slim, TriSlim, Slimberry, and HCG Xtreme (collectively, the "Weight Loss Products"), and also including colon cleanse products, which include but are not limited to ColoThin, Tone DeTox, and ColoPure (collectively, the "Colon Cleanse Products"), which Defendants often advertise, market, and promote with Weight Loss Products.

12. Defendants enter into contracts with merchants who sell products, including without limitation the Weight Loss Products and Colon Cleanse Products. Pursuant to these contracts, Defendants agree to promote the products in exchange for commissions or other payments from the merchants. Defendants promote the products through a network of affiliate marketers who act on behalf of and for the benefit of Defendants.

13. Defendants control and monitor their network of affiliate marketers by, among other things, soliciting affiliate marketers to advertise through Defendants' network, deciding which affiliate marketers to admit to, or expel from, the network, monitoring the advertisements used by their affiliate marketers, suggesting and designing advertisements for their affiliate marketers' use, and tracking the consumer traffic and revenue generated by each affiliate marketer. Affiliate marketers seeking to join Defendants' network must request admission, provide background and contact information, and agree to Defendants' terms and conditions. Defendants approve or reject the requests for admission. Defendants also decide which affiliate marketers in the network are allowed to market specific products. The affiliate marketers typically have no direct contact with the merchants who sell the products.

14. Defendants' affiliate marketers promote the products through websites. Some of these sites are designed to look like news reports. These sites use domain names such as

channel5healthnews.com, dailyconsumeralerts.com, and online6health.com, and mastheads such as "Channel 5 Health News" and "News 6." The reports have titles such as "Acai Berry Diet Exposed: Miracle Diet or Scam?" and "1 Trick of a Tiny Belly: Reporter Loses Her 'Belly' Using 1 Easy Tip." The sites often include the names and logos of major broadcast and cable television networks, falsely representing that the reports on the sites have been seen on these networks. Defendants design some of these websites for their affiliates to use.

15. The sites purport to provide objective investigative reports authored by reporters or commentators often pictured on the sites. The supposed authors of the reports claim to have tested the products on themselves or others with dramatic and positive results. Often following the reports are "comments" that appear to be independent statements made by ordinary consumers.

16. In fact, the news reports are fake. Reporters or commentators pictured on the sites are fictional and never conducted the tests or experienced the results described in the reports. The tests and results described on the sites never happened. The "comments" following the reports are simply additional advertising content, not independent statements from ordinary consumers. The sites do not even accept "comments" from consumers, but often state falsely that comments are temporarily closed due to spam.

17. The purpose of the affiliate marketers' websites is to promote the featured products, which merchants sell to consumers on other websites. The affiliate marketers' websites often represent that the products are available on a free trial basis. The websites are designed to entice consumers to click on links that will transfer them to a merchant's website where consumers can enter their credit or debit card information to purchase products or obtain a "free trial." Defendants receive a commission or other payment for each consumer who clicks

on a link and ultimately makes a purchase or signs up for a "free trial" on the merchant's website. Defendants pay a portion of these commissions or other payments to their affiliate marketers.

18. Defendants, through their affiliate marketers, have failed to disclose in a clear and conspicuous manner that they are not objectively evaluating the advertised products and, in fact, are being paid to promote the products. The websites of Defendants' affiliate marketers either fail entirely to disclose these facts, or fail to do so adequately. The relevant information, if disclosed at all, typically appears in small type at the bottom of the web page, following the fake consumer comments, well below the links to the products being sold.

19. Defendants, through their affiliate marketers, also have failed to disclose in a clear and conspicuous manner that consumers who do not affirmatively cancel within the trial period will be charged for the free trial samples, usually between $60 and $100 (or double the total if they order two trial products), and that consumers who order the trial samples are also automatically enrolled in a monthly continuity plan and charged each month for recurring shipments of the products.

20. The websites of Defendants' affiliate marketers either fail entirely to disclose these facts, or fail to do so adequately. The relevant information that consumers must cancel within a week or two weeks to avoid enrollment in a membership program and that they will be charged to receive monthly shipments of the product, if disclosed at all, typically appears on the affiliate marketers' websites in small type at the bottom of the page and most often buried with other fine print information. Many consumers do not see this fine print or are not aware at the time they provide their payment information that they must affirmatively cancel to avoid additional charges.

21. In promoting the Weight Loss Products and the Colon Cleanse Products, Defendants, through their affiliate marketers, also make deceptive claims about the Weight Loss Products and the Colon Cleanse Products. Defendants' affiliate marketers have represented in their websites, for example, that taking the Weight Loss Products and the Colon Cleanse Products, alone or in combination, causes rapid and substantial weight loss. Defendants' affiliate marketers typically claim on their sites that persons who tested the Weight Loss Products and Colon Cleanse Products, alone or in combination, lost twenty-five pounds or more in four weeks without any special diet or intense exercise.

22. In truth and in fact, the Weight Loss Products and the Colon Cleanse Products, alone or in combination, do not cause rapid and substantial weight loss, nor do Defendants or their affiliate marketers possess and rely upon a reasonable basis to substantiate representations that consumers who use the Weight Loss Products and the Colon Cleanse Products, alone or in combination, will rapidly lose a substantial amount of weight.

23. Defendants know or should know about the deceptive practices their affiliate marketers have used to promote the Weight Loss Products and the Colon Cleanse Products, including but not limited to the fakes news websites and false product claims described above. Defendants have failed to employ reasonable, appropriate measures to prevent the deceptive practices.

24. In addition to advertising, marketing, and promoting various merchants' products through their network of affiliate marketers, Defendants also in some instances have actively participated in the preparation and design of the websites of merchants, including but not limited to the websites of Central Coast Nutraceuticals, Inc. Defendants in some instances have actively participated in the preparation and design of merchant websites that include deceptive claims

about the Weight Loss Products and the Colon Cleanse Products as well as inadequate disclosure of material facts about the "free trial" offers.

25. For example, Defendants have designed and provided to merchants for dissemination to the public statements representing that the use of one or more of the merchants' Weight Loss Products, alone or in combination with one or more of the merchants' Colon Cleanse Products, causes rapid and substantial weight loss. In truth and in fact, the Weight Loss Products and the Colon Cleanse Products, alone or in combination, do not cause rapid and substantial weight loss, nor do Defendants or their merchant clients possess and rely upon a reasonable basis to substantiate such a representation. Defendants knew or should have known that these representations were, and are, false and misleading.

26. Defendants also have designed and provided to merchants for dissemination to the public representations about the merchants' trial offers. In some instances, these representations have failed to disclose in a clear and conspicuous manner that consumers who do not affirmatively cancel within the trial period will be charged for the free trial samples, usually between $60 and $100 (or double the total if they order two trial products), and that consumers who order the trial samples are also automatically enrolled in a monthly continuity plan and charged each month for recurring shipments of the products. Defendants knew or should have known that the failure to disclose adequately these material terms was, and is, deceptive.

## VIOLATIONS OF THE FTC ACT

27. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

28. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act. Section 12 of the FTC Act, 15

U.S.C. § 52, prohibits the dissemination of any false advertisement in or affecting commerce for the purpose of inducing, or which is likely to induce, the purchase of food, drugs, devices, services, or cosmetics. For the purposes of Section 12 of the FTC Act, 15 U.S.C. § 52, the Weight Loss Products are either a "food" or "drug" as defined in Section 15(b) and (c) of the FTC Act, 15 U.S.C. § 55(b), (c).

## COUNT ONE

### False and Unsubstantiated Product Claims

29. Through the means described in Paragraphs 11 through 26 of this Complaint, Defendants, through their own actions and those of their affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that use of the Weight Loss Products and the Colon Cleanse Products, alone or in combination, will result in rapid and substantial weight loss, including as much as twenty-five pounds in four weeks.

30. The representations set forth in Paragraph 29 of this Complaint are false or were not substantiated at the time the representations were made.

31. Therefore, the making of the representations as set forth in Paragraph 29 of this Complaint constitutes a deceptive act or practice and the making of false advertisements, in or affecting commerce, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

## COUNT TWO

### Misrepresentations (Fake News Reports)

32. Through the means described in Paragraphs 11 through 26 of this Complaint, Defendants, through affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that:

a. Websites of Defendants' affiliate marketers are objective news reports;

b. Objective news reporters have performed independent tests demonstrating the effectiveness of the products featured, including but not limited to the Weight Loss Products and the Colon Cleanse Products, alone or in combination; and

c. The comments following the "articles" on the websites of Defendants' affiliate marketers express the views of independent consumers.

33. In truth and in fact:

a. The websites of Defendants' affiliate marketers are advertisements made to appear as objective news reports;

b. Objective news reporters have not performed independent tests demonstrating the effectiveness of the products featured, including but not limited to the Weight Loss Products and the Colon Cleanse Products, alone or in combination; and

c. The comments following the "articles" on the websites of Defendants' affiliate marketers do not express the views of independent consumers.

34. Therefore, the making of the representations as set forth in Paragraph 32 of this Complaint constitutes a deceptive act or practice, in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT THREE

### Failure to Disclose (Connection to Seller)

35. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of the Weight Loss Products, the Colon Cleanse Products and other products, including through the means described in Paragraphs 11 through 26 of this Complaint, Defendants, through affiliates acting on their behalf and for their benefit, have represented,

expressly or by implication, that the content of the affiliate marketers' websites has been authored by an objective journalist who has conducted independent tests.

36. In numerous instances in which Defendants have made the representations set forth in Paragraph 35 of this Complaint, Defendants and their affiliates have failed to disclose or disclose adequately to consumers that the content of the websites has not been authored by an objective journalist but is in fact an advertisement placed by Defendants' affiliate marketers. Defendants receive commissions or other payments when consumers purchase the products or sign up for "free trials" on the product-selling websites.

37. Defendants' failure to disclose or disclose adequately the material information described in Paragraph 36 above, in light of the representation described in Paragraph 35 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT FOUR

### Failure to Disclose (Trial Offer)

38. In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of products, including the Weight Loss Products and the Colon Cleanse Products, Defendants, through their own actions and those of their affiliates acting on their behalf and for their benefit, have represented, expressly or by implication, that consumers who pay a nominal fee to receive a trial supply of the product will incur no risks or obligations.

39. In numerous instances in which Defendants and their affiliates have made the representations set forth in Paragraph 38 of this Complaint, Defendants and their affiliates have failed to disclose, or to disclose adequately, to consumers the material terms and conditions of the offer, including, but not limited to, that:

a. consumers who sign up to receive a trial supply of the products are charged for the trial supply of the product if they do not return it within a certain period of time; and

b. consumers who sign up to receive a trial supply of the products are automatically enrolled in a continuity program for the products and must cancel the program within a specified period of time to avoid additional recurring shipments of products and charges.

40. Defendants' failure to disclose or to disclose adequately the material information described in Paragraph 39 above, in light of the representation described in Paragraph 38 above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## **CONSUMER INJURY**

41. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act. In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

42. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order preserving assets, and an accounting;

B. Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

WILLARD K. TOM
General Counsel

Dated: November 13, 2012

s/ Matthew H. Wernz
MATTHEW H. WERNZ
STEVEN M. WERNIKOFF
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [main]
(312) 960-5596 [direct]
(312) 960-5600 [facsimile]
mwernz@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION