| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) Case No. 12-cv-9087 |
| | ) |
| v. | ) Judge John W. Darrah |
| | ) |
| CLICKBOOTH.COM, LLC, a Florida limited | ) Magistrate Judge Jeffrey Cole |
| liability company, also d/b/a Clickbooth, | ) |
| | ) |
| INTEGRACLICK, LLC, a Florida limited liability | ) |
| company, f/k/a IntegraClick, Inc., | ) |
| | ) |
| JOHN DANIEL LEMP, individually, as an owner | ) |
| and officer of INTEGRACLICK, LLC, and as | ) |
| an officer of CLICKBOOTH.COM, LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## STIPULATED FINAL JUDGMENT AND ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AS TO DEFENDANTS CLICKBOOTH.COM, LLC, INTEGRACLICK, LLC, AND JOHN DANIEL LEMP

Plaintiff, the Federal Trade Commission ("FTC" or "Commission"), pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), filed its Complaint for Permanent Injunction and Other Equitable Relief ("Complaint"), alleging deceptive acts or practices and false advertisements in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52.

Plaintiff and Defendants Clickbooth.com, LLC, IntegraClick, LLC, and John Daniel Lemp ("Defendants"), having been represented by counsel, and acting by and through said counsel, have consented to the entry of this Stipulated Final Judgment and Order for Permanent

Injunction and Other Equitable Relief ("Order") without a trial or adjudication of any issue of law or fact herein.

**NOW THEREFORE**, Plaintiff and Defendants, having requested the Court to enter this Order, and the Court having considered the Order reached between the parties, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

### FINDINGS

1. This is an action by the Commission instituted under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). The Commission has the authority to seek the relief contained herein.

2. The Commission's Complaint states claims upon which relief may be granted under Sections 5(a), 12 and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 52 and 53(b).

3. This Court has jurisdiction over the subject matter of this case and personal jurisdiction over Defendants.

4. Venue in the United States District Court for the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

5. The alleged activities of Defendants are "in or affecting commerce" as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6. Defendants agree to entry of this Order. Defendants do not admit or deny the allegations set forth in the Commission's Complaint, except for admitting the jurisdictional facts and as otherwise specifically stated in this Order.

7. Defendants waive: (a) all rights to seek judicial review or otherwise challenge or contest the validity of this Order; (b) any claim that they may have against the Commission, its employees, representatives, or agents; (c) all claims under the Equal Access to Justice Act, 28

U.S.C. § 2412, *as amended by* Pub. L. 104-121, 110 Stat. 847, 863-64 (1996); and (d) any rights to attorney's fees that may arise under said provision of law. The Commission and Defendants shall each bear their own costs and attorney's fees incurred in this action.

8. This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

9. Entry of this Order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1. **"Acai Berry Product"** or **"Acai Berry Products"** mean any Dietary Supplement, Food, or Drug, sold alone or in combination with companion products, that is advertised, marketed, promoted, offered for sale, distributed, or sold with express or implied representations that the product contains acai berries or the extract thereof.

2. **"Adequate and Well-Controlled Human Clinical Study"** means a human clinical study that is randomized, double-blind, placebo-controlled, and conducted by persons qualified by training and experience to conduct such a study.

3. **"Affiliate"** means any Person, including third-party marketers, who participates in an Affiliate Program.

4. **"Affiliate Network"** means any Person who provides another Person with Affiliates for an Affiliate Program or whom any Person contracts with as an Affiliate to promote any good or service.

5. **"Affiliate Program(s)"** means (a) any arrangement under which any marketer or seller of a product or service pays, offers to pay, or provides or offers to provide any form of

consideration to any Defendant, either directly or through an Affiliate Network, to (i) provide the marketer or seller with, or refer to the marketer or seller, potential or actual customers; or (ii) otherwise market, advertise, or offer for sale the product or service on behalf of the marketer or seller; or (b) any arrangement under which any Defendant pays, offers to pay, or provides or offers to provide any form of consideration to any third party, either directly or through an Affiliate Network, to (i) provide any Defendant with, or refer to any Defendant, potential or actual customers; or (ii) otherwise market, advertise, or offer for sale any product or service on behalf of any Defendant.

6. **"Assisting Others"** includes, but is not limited to: (a) arranging for the dissemination or publication of advertisements; (b) assisting in the formulation, drafting, or revision of advertisements; (c) creating, hosting, or maintaining websites; (d) recruiting third parties to advertise or market products, services, or programs; (e) obtaining or generating customer leads; (f) performing or providing marketing, billing, or collection services of any kind; (g) verifying, processing, fulfilling, or arranging for the fulfillment of orders; or (h) acting as an officer or director of a business entity. *Provided, however,* it shall be a defense for a Defendant engaged in "Assisting Others" as defined herein, to establish that it neither knew nor had reason to know of any misrepresentation prohibited by Subsection I.A, of any failure to disclose prohibited by Subsection I.B, or that any representation covered by Section II, III, or IV was not supported by competent and reliable scientific evidence as required by those Sections.

7. **"Clearly and Prominently"** shall mean: (a) in textual communications (e.g., printed publications or words displayed on the screen of a computer), the required disclosures are of a type, size, and location sufficiently noticeable for an ordinary consumer to read and

comprehend them, in print that contrasts with the background on which they appear; (b) in communications disseminated orally or through audible means (e.g., radio or streaming audio), the required disclosures are delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend them; (c) in communications disseminated through video means (e.g., television or streaming video), the required disclosures are in writing in a form consistent with subparagraph (a) of this definition and shall appear on the screen for a duration sufficient for an ordinary consumer to read and comprehend them; (d) in communications made through interactive media, such as the Internet, online services, and software, the required disclosures are unavoidable and presented in a form consistent with subparagraph (a) of this definition, in addition to any audio or video presentation of them; and (e) in all instances, the required disclosures are presented in an understandable language and syntax, in the same language as the predominant language that is used in the communication, and with nothing contrary to, inconsistent with, or in mitigation of the disclosures used in any communication of them.

8.      **"Corporate Defendants"** means Clickbooth.com, LLC, also doing business as Clickbooth, and IntegraClick, LLC, formerly known as IntegraClick, Inc., or any of them, and their successors and assigns, as well as any subsidiaries and any fictitious business entities or business names created or used by these entities.

9.      **"Defendant"** or **"Defendants"** means the Individual Defendant and the Corporate Defendants, individually, collectively, or in any combination.

10.     **"Device"** means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or

accessory, which is— (a) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them; (b) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals; or (c) intended to affect the structure or any function of the body of man or other animals; and which does not achieve any of its principal intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

11.     **"Dietary Supplement"** means: (a) any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or (b) any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that are a vitamin, mineral, herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above that is intended to be ingested, and is not represented to be used as a conventional Food or as a sole item of a meal or the diet.

12.     **"Drug"** means: (a) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; (b) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; (c) articles (other than Food) intended to affect the structure or any function of the body of man or other animals; and (d) articles intended for use as a component of any article specified in clause (a), (b), or (c); but does not include Devices or their components, parts, or accessories.

13.     **"Endorsement"** means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness, or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser.

14.     **"Essentially Equivalent Product"** means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Dietary Supplement, Food, or Drug; *provided that* the Dietary Supplement, Food, or Drug may contain additional ingredients if reliable scientific evidence generally accepted by experts in the field demonstrates that the amount and combination of additional ingredients are unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

15.     **"Food"** means: (a) articles used for food or drink for man or other animals; (b) chewing gum; and (c) articles used for components of any such article.

16.     **"Individual Defendant"** means John Daniel Lemp, and by whatever other names he may be known.

17.     **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

18.     **"Plaintiff"** means the Federal Trade Commission ("FTC" or "Commission").

# I.

## PROHIBITED BUSINESS ACTIVITIES

**IT IS THEREFORE ORDERED** that Defendants and their officers, agents, servants, employees and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, in connection with the advertising, marketing, promotion, offering for sale, or sale of any product, service, or program, are hereby permanently restrained and enjoined from:

A.      Misrepresenting, or Assisting Others in misrepresenting, any material fact, expressly or by implication, including, but not limited to:

1.      That any website or other publication is an objective news report;

2.      That objective news reporters have performed independent tests of any product, service, or program, including, but not limited to, Acai Berry Products or any other Dietary Supplement, Food, Drug, or Device, work-at-home programs, surplus auction services, teeth whitening products, or skin cream products;

3.      That independent tests demonstrate the effectiveness of any product, service, or program featured in any website or other publication, including, but not limited to, Acai Berry Products or any other Dietary Supplement, Food, Drug, or Device, work-at-home programs, surplus auction services, teeth whitening products, or skin cream products;

4.      That comments posted on websites express the views of independent consumers;

5. That there is no cost for a trial of goods or services or that consumers will be charged only a nominal fee;

6. The total cost to purchase, receive, or use the product, service, or program;

7. Any material restrictions, limitations, or conditions to purchase, receive, or use the product, service, or program;

8. Any material aspect of the performance, efficacy, nature, or central characteristics of the product, service, or program; and

9. Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the product, service, or program; and

B. Failing to disclose, or Assisting Others in failing to disclose, Clearly and Prominently:

1. Any material connection, when one exists, between any user or endorser of any product, service, or program and Defendants or any other person manufacturing, advertising, labeling, promoting, offering for sale, selling or distributing such product, service, or program;

2. If applicable, that the content of any website or other publication has not been authored by an objective journalist but is in fact an advertisement placed for compensation; and

3.      If applicable, that the consumer will be subject to recurring charges for additional shipments of goods or services unless and until the consumer takes specific steps to cancel the additional shipments.

C.      Failing to, in connection with the advertising, promotion, marketing, offering for sale, sale, or provision of any goods or services through an Affiliate Program:

1.      Require each Affiliate and/or Affiliate Network used in any Affiliate Program to provide to Defendants the following identifying information:

a.      In the case of a natural person, the Affiliate's or Affiliate Network's first and last name, physical address, country, telephone number, email address, and complete bank account information as to where payments are to be made to that Person;

b.      In the case of a business entity that is a direct Affiliate with Defendants, the Affiliate's name and any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email address for at least one natural person who owns, manages, or controls the Affiliate, and the complete bank account information as to where payments are to be made to the Affiliate;

c.      In the case of a business entity that is an Affiliate Network, the Affiliate Network's name and any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email address for at least one natural person who owns, manages, or controls the

Affiliate Network, and the complete bank account information as to where payments are to be made to the Affiliate Network; and

        d.     If Defendants have access to certain Affiliates only through an Affiliate Network, then Defendants shall contractually require each Affiliate Network to obtain and maintain from those Affiliates the identifying information set forth in Subsection C.1.a and C.1.b of this Section prior to the Affiliate's or Affiliate Network's participation in any Defendants' Affiliate Program.

        2.     As a condition of doing business with any Affiliate or Affiliate Network or such Affiliate or Affiliate Network's acceptance into any Defendant's Affiliate Program: (a) provide each such Affiliate or Affiliate Network a copy of this Order; (b) obtain from each such Affiliate or Affiliate Network a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order; and (c) clearly and conspicuously disclose in writing that engaging in acts or practices prohibited by this Order will result in immediate termination of any Affiliate or Affiliate Network and forfeiture of all monies owed to such Affiliate or Affiliate Network; *provided, however,* that if Defendants have access to certain Affiliates only through an Affiliate Network, then Defendants shall contractually require that the Affiliate Network provide the information required by this Subsection to each of those Affiliates and retain proof of the same prior to any such Affiliate being used in any Defendant's Affiliate Program; and if Defendants should acquire an entity that has an existing program of selling through affiliates, the entity must complete all steps in this Subsection prior to Defendants' acquisition of the entity.

3.      Require that each Affiliate or Affiliate Network, prior to the public use or dissemination to consumers of any marketing materials, including, but not limited to, websites, emails, and pop-ups used by any Affiliate or Affiliate Network to advertise, promote, market, offer for sale, or sell any goods or services through any Defendant's Affiliate Program, provide Defendants with the following information: (a) copies of marketing materials to be used by the Affiliate or Affiliate Network, including text, graphics, video, audio, and photographs; (b) each location the Affiliate or Affiliate Network maintains, or directly or indirectly controls, where the marketing materials will appear, including the URL of any website; and (c) for hyperlinks contained within the marketing materials, each location to which a consumer will be transferred by clicking on the hyperlink, including the URL of any website. Defendants shall also require each Affiliate or Affiliate Network to maintain and provide to Defendants upon request records of the dates when the marketing materials are publically used or disseminated to consumers. *Provided, however,* that if Defendants have access to certain Affiliates only through an Affiliate Network, then Defendants shall contractually require that the Affiliate Network obtain and maintain the same information set forth above from each of those Affiliates who are part of any Defendant's Affiliate Program prior to the public use or dissemination to consumers of any such marketing materials, and provide proof to such Defendant of having obtained the same.

4.      Promptly review the marketing materials specified in Section I.C.3 above as necessary to ensure compliance with this Order. Defendants shall also promptly take steps as necessary to ensure that the marketing materials provided to Defendants under Section I.C.3 above are the marketing materials publically used or disseminated to consumers by the Affiliate or Affiliate Network. If a Defendant determines that use of any marketing materials does not

comply with this Order, such Defendant shall inform the Affiliate or Affiliate Network in writing that approval to use such marketing materials is denied and shall not pay any amounts to the Affiliate or Affiliate Network for such marketing, including any payments for leads, "click-throughs," or sales resulting therefrom. *Provided, however,* that if Defendants have access to certain Affiliates only through an Affiliate Network, then Defendants shall contractually require that the Affiliate Network comply with the procedures set forth in this Subsection as to those Affiliates.

5.  Promptly investigate any complaints that any Defendant receives through any source to determine whether any Affiliate or Affiliate Network is engaging in acts or practices prohibited by this Order, either directly or through any Affiliate that is part of any Defendant's Affiliate Program.

6.  Upon determining that any Affiliate or Affiliate Network has engaged in, or is engaging in, acts or practices prohibited by this Order, either directly or through any Affiliate that is part of any Defendant's Affiliate Program, immediately:

a.  Disable any connection between the Defendant's Affiliate Program and the marketing materials used by the Affiliate or Affiliate Network to engage in such acts or practices prohibited by this Order;

b.  Halt all payments to the Affiliate or Affiliate Network resulting from such acts or practices prohibited by this Order; and

c.  Terminate the Affiliate or Affiliate Network; *provided, however,* Defendants shall not be in violation of this subsection if Defendants fail to terminate an Affiliate

Network in a case where Defendants' only access to an Affiliate who has engaged in acts or practices prohibited by this Order is through an Affiliate Network and the Affiliate Network immediately terminates the Affiliate violating this Order from any Affiliate Program maintained by any Defendant.

## II.

### PROHIBITED REPRESENTATIONS: WEIGHT LOSS CLAIMS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Dietary Supplement, Food, or Drug, are hereby permanently restrained and enjoined from making, or Assisting Others in making, directly or by implication, including through the use of a product name, Endorsement, depiction, or illustration, any representation that such product:

A.    Causes or helps cause weight loss;

B.    Causes or helps cause rapid weight loss; or

C.    Causes or helps cause substantial weight loss;

unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that substantiates that the representation is true. For purposes of this Section, competent and reliable scientific evidence shall consist of at least two Adequate and Well-Controlled Human Clinical Studies of

any Dietary Supplement, Food, or Drug or of an Essentially Equivalent Product, conducted by different researchers, independently of each other, that conform to acceptable designs and protocols and whose results, when considered in light of the entire body of relevant and reliable scientific evidence, are sufficient to substantiate that the representation is true. Defendants shall have the burden of proving that a product satisfies the definition of Essentially Equivalent Product.

## III.

### PROHIBITED REPRESENTATIONS: OTHER HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Dietary Supplement, Food, Drug, or Device, are hereby permanently restrained and enjoined from making, or Assisting Others in making, directly or by implication, including through the use of a product name, Endorsement, depiction, or illustration, any representation, other than representations covered under Section II of this Order for any Dietary Supplement, Food, or Drug, about the health benefits, performance, or efficacy of any Dietary Supplement, Food, Drug, or Device, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant

scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true. For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results.

IV.

PROHIBITED REPRESENTATIONS:<br>NON-HEALTH-RELATED CLAIMS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, in connection with the advertising, marketing, promotion, offering for sale, or sale of any product, service, or program that is *not* a Dietary Supplement, Food, Drug, or Device, are hereby permanently restrained and enjoined from making, or Assisting Others in making, directly or by implication, including through the use of a product name, Endorsement, depiction, or illustration, any representation regarding the benefits, performance, or efficacy of any products, services, or programs, unless the representation is true, not misleading, and, at the time it is made, Defendants possess and rely upon competent and reliable evidence that substantiates that the representation is true. For the purposes of this Section, competent and reliable evidence means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by individuals

qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

## V.

## PROHIBITED REPRESENTATIONS: TESTS OR STUDIES

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees and attorneys and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Dietary Supplement, Food, Drug, or Device, or any other product, service, or program, in or affecting commerce, are hereby permanently restrained and enjoined from misrepresenting, in any manner, expressly or by implication, including through the use of any product name or Endorsement, the existence, contents, validity, results, conclusions, or interpretations of any test, study, or research, in connection with any representations covered by Sections II, III, and IV of this Order.

## VI.

## FDA APPROVED CLAIMS

**IT IS FURTHER ORDERED** that nothing in this Order shall prohibit Defendants from making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990.

# VII.

## MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.     Judgment is hereby entered in favor of the Commission and against Defendants, jointly and severally, for equitable monetary relief, in the amount of Two Million Dollars ($2,000,000.00). The judgment shall be payable in two installments as follows:

1.     On or before five (5) business days after the date of entry of this Order, Defendants shall wire transfer the sum of One Million, Five Hundred Thousand Dollars ($1,500,000.00) to the Commission or such agent as the Commission may direct, pursuant to instructions provided by the Commission.

2.     On or before ninety (90) days after the date of entry of this Order, Defendants shall wire transfer the sum of Five Hundred Thousand Dollars ($500,000.00) to the Commission or such agent as the Commission may direct, pursuant to instructions provided by the Commission. *Provided however*, Defendants shall receive credit against this second installment payment of Five Hundred Thousand Dollars ($500,000.00) for any payment made on or before ninety (90) days after the date of entry of this Order by any Defendant to the Florida Attorney General in settlement of the Florida Attorney General's investigation related to any Defendant's Affiliate Program. In order for Defendants to receive a credit for such payment, Defendants must provide to the Commission written proof in a form acceptable to the Commission that any such amount for which a credit is sought actually was paid to the Florida

Attorney General by the date on which the payment to the Commission required by this subsection is due.

B.    Time is of the essence for the payments specified above. In the event that Defendants default on their obligation to timely and completely fulfill their payment obligations:

1.    The entire unpaid amount together with interest, computed pursuant to 28 U.S.C. § 1961 from the date of default to the date of payment, shall immediately become due and payable; and

2.    The Commission shall be entitled to immediately exercise any and all rights and remedies against Defendants and their assets to collect the full amount of the judgment and interest thereon, less any amounts already paid.

C.    All funds paid pursuant to this Order shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including, but not limited to, consumer redress, and any attendant expenses for the administration of such equitable relief. Defendants shall cooperate fully to assist the Commission in identifying consumers who may be entitled to redress pursuant to this Order. If the Commission determines, in its sole discretion, that direct redress to consumers is wholly or partially impracticable or funds remain after redress is completed, the Commission may apply any remaining funds for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited to the United States Treasury as disgorgement. Defendants shall have no right to challenge the Commission's choice of remedies under this Section. Defendants shall have no

right to contest the manner of distribution chosen by the Commission. This judgment for equitable monetary relief is solely remedial in nature and is not a fine, penalty, punitive assessment, or forfeiture.

D.      In accordance with 31 U.S.C. § 7701, as amended, Defendants are hereby required, unless they already have done so, to furnish to the Commission their respective taxpayer identifying numbers (social security number or employer identification number), which shall be used for purposes of collecting and reporting on any delinquent amount arising out of Defendants' relationship with the government. Defendants are further required, unless they have already done so, to provide the Commission with clear, legible and full-size photocopies of all valid driver's licenses that they possess, which will be used for reporting and compliance purposes.

E.      Defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law. Defendants shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

F.      Defendants agree that the facts as alleged in the Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Order, including, but not limited to, a nondischargeability complaint in any bankruptcy case. Defendants further stipulate and agree that the facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel

effect for such purposes.

G.    Proceedings instituted under this Section are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

## VIII.

## COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that Defendants shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Complaint, cooperate in good faith with the FTC and appear, or cause their officers, employees, representatives, or agents to appear, at such places and times as the FTC shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC. If requested in writing by the FTC, Defendants shall appear, or cause their officers, employees, representatives, or agents to appear, and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or the occurrences that are the subject of the Complaint, without the service of a subpoena.

## IX.

## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.    Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.    For 5 years after entry of this Order, Individual Defendant, for any business that such Defendant, individually or collectively with any other Defendant, is the majority owner or directly or indirectly controls, and each Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and managers; (2) all employees, agents, and representatives who participate in affiliate marketing; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. To all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X.

## COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.    One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury.

1.    Each Defendant must: (a) designate at least one telephone number and an email, physical, and postal address as points of contact, which

representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the products and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.   Additionally, Individual Defendant must: (a) identify all telephone numbers and all email, Internet, physical, and postal addresses, including all residences; (b) identify all titles and roles in all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.   For twenty (20) years following entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that Defendant has any ownership interest in or directly or indirectly controls that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2. Additionally, Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify its name, physical address, and Internet address, if any.

C. Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:_____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all

submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or

sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement,

Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW,

Washington, DC 20580. The subject line must begin: FTC v. Clickbooth.com, LLC, FTC

Matter No. X_____.

<h2 style="text-align:center">XI.</h2>

<h3 style="text-align:center">RECORDKEEPING</h3>

**IT IS FURTHER ORDERED** that Defendants must create certain records for twenty

(20) years after entry of the Order, and retain each such record for 5 years. Specifically,

Corporate Defendants and Individual Defendant for any business in which that Defendant,

individually or collectively with any other Defendant, is a majority owner or directly or

indirectly controls, must maintain the following records:

A.     Accounting records showing the revenues from all goods or services sold, all

costs incurred in generating those revenues, and the resulting net profit or loss;

B.     Personnel records showing, for each person providing services, whether as an

employee or otherwise, that person's: name, addresses, and telephone numbers; job title or

position; dates of service; and, if applicable, the reason for termination;

C.     Records relating to Affiliates or Affiliate Networks including all names,

addresses, and telephone numbers; dollar amounts paid or received; and information used in

calculating such payments;

D.     Complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

F.     Copies of all marketing materials, documents, and information received pursuant to Subsection I.C.3 of this Order; and all written approvals or denials of marketing materials made pursuant to Subsection I.C.4 of this Order; and

G.     For any goods or services that Defendants sell or Assist Others to sell, a copy of each advertisement or other marketing material regarding such goods or services.

## XII.

## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission is authorized to communicate with each Defendant through undersigned counsel. If undersigned counsel no longer represents that Defendant, the Commission is authorized to communicate directly with such Defendant.. Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIII.

### RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**IT IS SO ORDERED.**

Dated: _11/28/12_____, 2012

_____
Honorable John W. Darrah
United States District Judge


**SO STIPULATED AND AGREED:**

Date: 11/13/2012

Matthew H. Wernz
Steven M. Wernikoff
Attorneys for Plaintiff Federal Trade Commission

Date: 9/18/2012

Defendant Clickbooth.com, LLC
John Daniel Lemp, Chief Executive Officer

Date: 9/18/2012

Defendant IntegraClick, LLC
John Daniel Lemp, Chief Executive Officer

Date: 9/18/2012

Defendant John Daniel Lemp

Date: _____

Attorney for Defendants Clickbooth.com, LLC,
IntegraClick, LLC, and John Daniel Lemp

_____   Date:_____

Matthew H. Wernz
Steven M. Wernikoff
Attorneys for Plaintiff Federal Trade Commission


_____   Date:_____

Defendant Clickbooth.com, LLC
John Daniel Lemp, Chief Executive Officer


_____   Date:_____

Defendant IntegraClick, LLC
John Daniel Lemp, Chief Executive Officer


_____   Date:_____

Defendant John Daniel Lemp


_____   Date: _9/ 18 /2012_

Attorney for Defendants Clickbooth.com, LLC,
IntegraClick, LLC, and John Daniel Lemp